UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOHAMED ABDIKARIM,<br><br>Petitioner(s),<br>v.<br><br>BRUCE SCOTT, et al.,<br><br>Respondent(s). | CASE NO. C26-2731-KKE<br><br>ORDER GRANTING HABEAS PETITION |

After Petitioner was arrested and detained by United States Immigration and Customs Enforcement ("ICE") agents, he filed a petition for a writ of habeas corpus under 28 U.SC. § 2241, representing himself. Dkt. No. 3. His petition argues that his detention is unlawful because it violates his constitutional right to procedural due process. *Id*. at 23. The Government[1] filed its return, arguing that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Dkt. No. 7.

The Court rejects the Government's argument as to the governing detention authority, and finds that further briefing from Petitioner is not needed in order to resolve the petition. For the following reasons, the Court finds that Petitioner's detention is unlawful and will grant the petition and order the release of Petitioner.

[1] In this order, the Court refers to the federal Respondents collectively as "the Government."

## I. BACKGROUND

Petitioner is a native and citizen of Somalia who entered the United States without inspection or admission in May 2022. Dkt. No. 8 ¶ 3. He was initially detained by U.S. Border Patrol and then released on his own recognizance. Dkt. No. 8 ¶¶ 4–5, Dkt. No. 9-2. The Government charged Petitioner with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act and served him with a notice to appear. Dkt. No. 9-3.

As part of "Operation Metro Surge" in Minnesota, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner in December 2025. Dkt. No. 9-1. Petitioner was transported to the Dakota County Jail. Dkt. No. 8 ¶ 8. He received a bond hearing in January 2026, and the immigration judge found that the court lacked jurisdiction to grant bond because Petitioner was subject to mandatory detention. Dkt. No. 9-4.

The Government thereafter requested that the immigration court pretermit Petitioner's application for asylum and withholding of removal application. Dkt. No. 9-5. The immigration judge granted this motion, finding that Petitioner had not shown that he was entitled to relief and ordered him removed to Uganda on February 13, 2026. *Id*. Petitioner appealed the immigration judge's orders to the Board of Immigration Appeals in March 2026, and the appeal remains pending. Dkt. No. 8 ¶ 12. Petitioner was transferred to the Northwest ICE Processing Center in Tacoma, Washington, in July 2026 and remains detained there. *Id.* ¶ 13.

Petitioner filed a petition for a writ of habeas corpus requesting immediate release from detention subject to his prior supervision conditions. Dkt. No. 3 at 26. For the following reasons, the Court grants the habeas petition.

## II. ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28

U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner received the process appropriate to his circumstances.

### A. Petitioner Was Subject to 8 U.S.C. § 1226(a) When He Was Re-Detained.

To determine whether Petitioner's re-detention complies with due process, the Court must first determine the statutory authority governing Petitioner's re-detention. *See Prieto-Romero v.*

*Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

Although the Government asserts that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) as an "applicant for admission" (Dkt. No. 7 at 1–2), many courts, including the Ninth Circuit, have rejected the application of Section 1225(b)(2)(A) to a noncitizen such as Petitioner, who was previously released on supervision and has been living in this country since 2022. *See, e.g., Rodriguez Vazquez v. Bostock*, __ F.4th __, 2026 WL 2196424, at *26 (9th Cir. July 30, 2026) (concluding that Section 1225(b)(2)(A) applies to "unadmitted aliens entering the United States at the border" and that Section 1226 governs "unadmitted aliens present in the interior of the country"); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an

interpretation of a federal statute that engenders constitutional issues." (citation modified)). "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases).

Accordingly, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner is detained under Section 1226(a) rather than Section 1225(b), and will go on to apply the *Mathews* factors in this context.[2]

**B. Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was arrested and remains in custody months later undoubtedly presents a deprivation of Petitioner's interest in his liberty. The Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

Accordingly, the first *Mathews* factor favors Petitioner.

**C. The Risk of Erroneous Deprivation Is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of adequate notice of the justification for detention.

[2] The Court notes that the Government's return does not address the *Mathews* factors or Petitioner's due process arguments: its limited opposition to Petitioner's release begins and ends with its interpretation of Section 1225(b)(2)(A). Dkt. No. 7.

As described earlier in this order, Petitioner was arrested without a particularized explanation; the record contains no documented revocation of his supervision order. Where an order of supervision is revoked for unspecified reasons, the Court finds the risk of erroneous deprivation of liberty is high. *See, e.g.*, *Gunes v. Chestnut*, No. 1:26-cv-00080-JLT-SAB-HC, 2026 WL 218879, at *3 (E.D. Cal. Jan. 28, 2026), *R&R adopted*, 2026 WL 498432 (E.D. Cal. Feb. 23, 2026).

Thus, the second *Mathews* factor favors Petitioner.

**D. The Government's Interest in Detaining Petitioner Without Process is Low.**

In applying the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without process.

The Court finds that the Government's interest in re-detaining non-citizens previously released without process is "minimal": any administrative or financial burdens in providing Petitioner notice or a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). The third *Mathews* factor thus favors Petitioner.

Accordingly, the Court finds that Petitioner's due process rights have been violated and turns to consider the appropriate remedy.

## III. REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional re-detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained. *See, e.g.*, *Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1154 (N.D. Cal. 2025) ("If the government wishes to re-detain [the petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At a future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

Petitioner also requests that upon his release, the Government return him to St. Paul, Minnesota, where his family will meet him. Dkt. No. 3 at 26. The Government did not reference this request in its return. Dkt. No. 7. Because this request is unopposed, and the Court finds that it is appropriate to restore Petitioner to his status before his unlawful detention occurred, the Court will order that the Government facilitate Petitioner's return to the Twin Cities. *See, e.g.*, *Josue I.C.A. v. Lyons*, No. 1:25-cv-01542-SKO (HC), 2025 WL 3496432, at *2, 6 (E.D. Cal. Dec. 5, 2025) (ordering the government to return petitioner to Maryland, where he was originally arrested and detained before being transferred to a California facility).

## IV. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 3.

The Court ORDERS that Petitioner shall be released from custody no later than **August 19, 2026**, on the terms of his most recent order of recognizance and with the personal property and documents seized at the time of his detention. *See* Dkt. No. 3 at 26. The Court further ORDERS the Government to finance arrangements to promptly return Petitioner to Minneapolis/St. Paul, Minnesota.

Petitioner may not be re-detained until after a hearing is held (with adequate notice) to determine whether re-detention is appropriate.[3] At any future pre-deprivation hearing, in order to re-detain Petitioner, the Government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

The Government shall file a status report no later than **August 21, 2026**, documenting Petitioner's release and the return of his property and documents, in compliance with this order. If Petitioner has not been returned to Minnesota by that date, the Government's status report shall describe the steps taken to facilitate his return and when Petitioner is scheduled to arrive in Minnesota. The Court may order additional status reports as needed.

Dated this 18th day of August, 2026.

Kymberly K. Evanson
United States District Judge

[3] This order does not address the circumstances in which Respondents may detain Petitioner if he becomes subject to a final order of removal.